# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:22-cr-00214-JAD-DJA |
| Plaintiff | |
| v. | **Order Overruling Objections and Adopting Report and Recommendation** |
| Justin Edward Brown, | [ECF No. 25, 26, 40] |
| Defendant | |

Defendant Justin Edward Brown is charged with being a felon in possession of a firearm and ammunition.  He moves for a bill of particulars and to dismiss his indictment, arguing that he cannot adequately prepare his case without more information on the gun's interstate nexus, and that his charging statute is unconstitutional because it does not satisfy the new test established in *New York State Rifle & Pistol Ass'n, Inc., v. Bruen*.  The government responds that the gun's interstate nexus is superfluous when the charging statute bears a substantial relation to interstate commerce.  It also argues that the Second Amendment does not protect individuals with felony convictions, and there is a longstanding history and tradition of limiting felons' gun rights.

The magistrate judge recommends that I grant Brown a bill of particulars and deny his motion to dismiss because Brown requires more clarification on the gun's interstate nexus to prepare his defense and *Bruen* did not abrogate Ninth Circuit jurisprudence that holds Brown's charging statute constitutional.  Both the government and Brown object to the respective recommendations.  On de novo review, I adopt the magistrate judge's recommendation to deny Brown's motion to dismiss his indictment.  And having reviewed the magistrate judge's recommendation for a bill of particulars for clear error, I overrule the government's objection and grant that motion, too.

**Background**

In June 2022, firefighters found Brown unconscious behind the wheel of his car with the engine still running.[1]  They woke him up, guided him from the car, and conducted a health examination.[2]  Upon inspection of his car, firefighters found a privately manufactured handgun on the driver's seat floor.[3]  Brown identified himself and confirmed to the firefighters that he had a felony conviction and needed the gun for protection.[4]  Brown later drove away while firefighters kept the gun and reported the encounter to the Las Vegas Metropolitan Police Department.[5]  Brown was eventually indicted on one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition under 18 § U.S.C. § 922(g)(1) and 924(a)(2).[6]

Brown now moves for a bill of particulars, arguing that the jurisdictional element of his charging statute may not be satisfied because a large component part of the gun was privately manufactured in Nevada.[7]  He also moves to dismiss his indictment as unconstitutional after the U.S. Supreme Court's decision in *Bruen* established a new test for Second Amendment challenges.[8]  The government contends that Brown can sufficiently prepare his case without more information about the gun's effect on interstate commerce.[9]  It also argues that § 922(g)(1) satisfies *Bruen*'s test because individuals with felony convictions are not protected by the Second

---

[1] ECF No. 29 at 2.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] ECF No. 1.

[7] ECF No. 25.

[8] ECF No. 26.

[9] ECF No. 30.

1   Amendment, and the statute is consistent with longstanding tradition.[10]  Brown supplements his

2   motion to dismiss with more caselaw that he avers supports his constitutional challenge.[11]

3          The magistrate judge recommends that I grant Brown a bill of particulars because the

4   facts of this case do not put Brown on notice of the gun's interstate nexus.[12]  He also

5   recommends that I deny Brown's motion to dismiss because the Ninth Circuit's decision in

6   *United States v. Vongxay*—the case that deemed § 922(g)(1) constitutionally sound—is still

7   controlling law after *Bruen*.[13]  The government objects to the magistrate judge's

8   recommendation for a bill of particulars, arguing that an interstate nexus is unnecessary when the

9   charging statute bears a substantial relation to interstate commerce.[14]  And Brown objects to the

10  magistrate judge's recommendation to deny his motion to dismiss because recent Ninth Circuit

11  decisions signal the court's intention to abrogate its pre-*Bruen* rulings.

**Discussion**

13         A district court reviews objections to a magistrate judge's proposed, dispositive findings

14  and recommendations de novo.[15]  "The district judge may accept, reject, or modify the

15  recommendation, receive further evidence, or resubmit the matter to the magistrate judge with

16  instructions."[16]  A district court reviews proposed, non-dispositive findings and

---

[10] ECF No. 29.

[11] ECF No. 38; ECF No. 39.

[12] ECF No. 40.

[13] *Id.*

[14] ECF No. 42.

[15] Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); Local Rule IB 3-2(b) (requiring a district judge to review de novo only the portions of a report and recommendation addressing a case-dispositive issue that a party objects to).

[16] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

1  recommendations for clear error.[17]  The standard of review applied to the unobjected-to portions

2  of the report and recommendation is left to the district judge's discretion.[18]

3  **A.    The government's objection to the grant of a bill of particulars is overruled.**

4       Brown argues that a bill of particulars is warranted because the government has not

5  explained how it intends to satisfy § 922(g)(1)'s jurisdiction element.[19]  "[A] bill of particulars is

6  appropriate [if] a defendant requires clarification in order to prepare a defense.  It is designed to

7  apprise the defendant of the specific charges being presented to minimize danger of surprise at

8  trial, to aid in preparation, and to protect against double jeopardy."[20]  But a bill of particulars is

9  not required if an indictment, other government disclosures, and discovery adequately informs

10  the defendant of his charges.[21]  He is not entitled to "all the evidence the government intends to

11  produce; [] only the theory of the government's case."[22]  And a court has full discretion to grant

12  or deny a bill of particulars.[23]

13       Brown contends that the gun's effect on interstate commerce is unclear because a

14  company that made a component part of the firearm is based in Nevada.[24]  And without further

15  information on how the gun was shipped, where it was manufactured, or which component

16  affects interstate commerce, he cannot properly mount a defense, prepare for trial, or avoid

17

---

18  [17] 28 U.S.C. § 636(b)(1)(A) (2012); L.R. IB 3–1.

     [18] *Reyna-Tapia*, 328 F.3d at 1121–22.

19  [19] ECF No. 25.

20  [20] *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (cleaned up).

     [21] *Id*. (citing *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973)).

21  [22] *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quoting *Yeargain v. United

22  States*, 314 F.2d 881, 882 (9th Cir. 1963)) (cleaned up).

     [23] *Long*, 706 F.2d at 1054 (citing *Will v. United States*, 389 U.S. 90, 99 (1967); *Wong Tai v.

23  United States*, 273 U.S. 77, 82 (1927)).

     [24] ECF No. 25 at 4–6.

4

double jeopardy.[25]  The government responds that the indictment, together with the warrant provided through discovery, is sufficient to inform Brown of its theory.[26]  The government highlights the text in count one of the indictment that includes the date and location of the offense, the particular firearm, and Brown's three prior convictions, arguing that these facts are sufficient to allow him to prepare his defense. [27]

In his report and recommendation, the magistrate judge recommends that I grant Brown's motion because the gun's interstate nexus requires further clarification.[28]  He explains that a large component of the gun was manufactured in Nevada, and the gun was also found in Brown's car in Nevada.[29]  So without more information about the gun's effect on interstate commerce, Brown cannot adequately prepare his case.[30]  But the government objects that, under long-established law, an interstate nexus may be found from mere "possession of any firearm or ammunition in or affecting commerce."[31]  It contends that the "de minimis character of individual instances of intrastate activity" is immaterial if the statute "bears a substantial relation to commerce" or the commercial activity affects interstate commerce in the aggregate.[32]

A bill of particulars is a non-dispositive matter, so I review the magistrate judge's order for clear error[33] and I find that, here, none exists.  "The purposes of a bill of particulars are to minimize the danger of surprise at trial and to provide sufficient information on the nature of the

---

[25] *Id*. at 2.

[26] ECF No. 30 at 6–8.

[27] *Id*. at 8.

[28] ECF No. 40 at 4.

[29] *Id*.

[30] *Id*.

[31] ECF No. 43 at 2, 10 (quoting 18 U.S.C. § 922(g)).

[32] *Id*. at 9.

[33] 28 U.S.C. § 636(b)(1)(A) (2012); L.R. IB 3–1.

charges to allow preparation of a defense.  These purposes are served if the indictment itself

provides sufficient details of the charges and if the [g]overnment provides full discovery to the

defense."[34]  The magistrate judge found that the indictment was woefully lacking such detail.

And indeed, Brown's indictment merely states that the privately manufactured handgun was

"possess[ed] [] in and affecting interstate commerce."[35]  But the facts of this case do not yet

place the gun or its component parts outside the state of Nevada.  And the magistrate judge found

that, without more detail about the gun's interstate nexus, Brown cannot fairly surmise the theory

of interstate impact from his indictment alone and adequately plan a defense.[36]  I do not find

clear error in this reasoning.

It's true that the Ninth Circuit only requires a "minimal nexus that the firearm [has] been,

at some time, in interstate commerce."[37]  And guns that are manufactured out of state, even if

years prior, can establish an interstate nexus sufficient to satisfy 922(g)'s jurisdictional

element.[38]  But the Ninth Circuit has yet to address the effect of privately manufactured guns—

colloquially known as "ghost guns"—on interstate activity.  And although it found that

homemade machine guns affect interstate commerce because § 922(o) bears a substantial relation

to interstate commerce, under a clear-error standard of review, I decline to extend this holding to

---

[34] *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (cleaned up).

[35] ECF No. 1 at 2.

[36] ECF No. 40 at 4.

[37] *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir. 1995), as amended on denial of reh'g (Aug. 9, 1995) (quoting *Scarborough v. United States*, 431 U.S. 563, 575 (1977)).

[38] *United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir. 1988) ("[A] past connection with commerce is enough."); *see, e.g.*, *United States v. Mendez*, 102 F. App'x 598, 599 (9th Cir. 2004) (A gun's movement through "interstate commerce eight years prior to [defendant's] possession" was sufficient to establish an interstate nexus.) (unpublished).

1  § 922(g).  So I overrule the government's objection, adopt the magistrate judge's

2  recommendation, and grant Brown's motion for a bill of particulars.

3

4  **B.**     **Brown's charging statute satisfies *Bruen*'s new test and does not violate the Second Amendment.**

5          Brown additionaly moves to dismiss his indictment as unconstitutional after the U.S.

6  Supreme Court's decision in *Bruen*[39] established a new test for courts to apply when analyzing

7  Second Amendment challenges.[40]  The Court's pre-*Bruen* decisions established a two-step

8  approach for these challenges.[41]  Under *D.C. v. Heller* and *McDonald v. City of Chicago*, a court

9  asked (1) whether the challenged regulation fell within the scope of the Second Amendment and,

10  if so, (2) what level of scrutiny was required to analyze that regulation.[42]  But the *Bruen* Court

11  found this test to contain "one step too many."[43]  Although a court must now stop after step one,

12  it must consider two distinct analytical questions within that step: whether "the Second

13  Amendment's plain text covers an individual's conduct" and, if so, whether the regulation "is

14  consistent with the nation's historical tradition of firearm regulation."[44]  The first question

15  requires "a textual analysis focused on the normal and ordinary meaning of the Second

16  Amendment's language."[45]  The second demands a historical assessment in which a court looks

17

18

19

---

[39] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

20  [40] ECF No. 26.

21  [41] *D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010).

[42] *Bruen*, 142 S. Ct. at 2126.

22  [43] *Id*. at 2127.

23  [44] *Id*. at 2126 (cleaned up).

[45] *Id*. at 2127 (quoting *Heller*, 554 U.S at 576–77, 578).

1  to the historical record to determine how the Second Amendment was interpreted around the

2  time of ratification up through the 19th century.[46]

3    1.   ***Vongxay remains controlling law.***

4    Brown argues in his motion to dismiss that this new test abrogated all prior Ninth Circuit

5  Second Amendment decisions—specifically *United States v. Vongxay*[47] and *United States v.*

6  *Chovan*[48]—that utilized the two-step approach.[49]  But the magistrate judge found that *Vongxay*

7  and *Chovan* are still consistent with *Heller*, *McDonald*, and *Bruen*.[50]  In his report and

8  recommendation, the magistrate judge explained that the Ninth Circuit examined the history and

9  tradition of gun regulations in *Vongxay* and concluded that § 922(g)(1) comported with a

10 tradition of limiting felon's gun rights and was thus constitutional.[51]

11   Brown objects that two Ninth Circuit decisions, *Teter v. Lopez*[52] and *Baird v. Bonta*,[53]

12 indicate that *Vongxay* is no longer controlling law.[54]  Brown reasons that the *Teter* court found

13 that *Bruen* abrogated *Chovan*—a case challenging the constitutionality of a ban on domestic-

14 violence misdemeanants' firearm possession—so the court is poised to abrogate other Second

15 Amendment decisions.[55]  But the *Chovan* court did not establish a longstanding historical

16

17 _____

   [46] *Id*. (citing *Heller*, 554 U.S. at 605).

18 [47] *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010).

19 [48] *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), *abrogated by Bruen*, 142 S. Ct. 2111.
   [49] ECF No. 26 at 4.

20 [50] ECF No. 40 at 5–6.

21 [51] *Id*.

   [52] *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023).

22 [53] *Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023).

23 [54] ECF No. 41 at 4.

   [55] *Id*. at 5.

tradition that would justify a ban on domestic-violence misdemeanants' gun rights.[56]  So *Teter* at most represents the Ninth Circuit's intention to abrogate Second Amendment precedent that can't pass *Bruen*'s textual and historical-tradition test.

Brown also supports his theory with the Ninth Circuit's decision in *Baird* —a case in which the court reversed the denial of a preliminary injunction enjoining California's ban on unlicensed open-carry handguns.[57]  Brown quotes the *Baird* court when he argues that "founding-era statutes that disarmed groups of persons who governments thought might be dangerous because of their race or religion" are not analogous to § 922(g)(1) limitations on felon's gun rights.[58]  But *Vongxay* does not compare § 922(g)(1) to historical regulations that disarmed people based on race or religion; it compares the statute to limitations on gun rights for "unvirtuous citizens (i.e. criminals)."[59]  The *Baird* court simply emphasized the requirement for an "analogous historical regulation" already imposed by the test in *Bruen*.[60]  It did not abrogate *Vongxay*.

The Court in *Bruen* recognized that, although a court should not uphold every modern law that has a remote historical counterpart, it is also not necessary that the government find a "historical *twin*" to a modern-day law.[61]  "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[62]

---

[56] *Chovan*, 735 F.3d at 1137.

[57] ECF No. 41 at 5, 8 (citing *Baird*, 81 F.4th at 1036).

[58] *Id*. at 8 (quoting *Baird*, 81 F.4th at 1047) (cleaned up).

[59] *Vongxay*, 594 F.3d at 1118.

[60] *Baird*, 81 F.4th at 1046.

[61] *Bruen*, 142 S. Ct. at 2133 (original emphasis).

[62] *Id*.

1    The *Vongxay* court did examine the text of the Second Amendment and the historical

2 tradition of restricting felons' gun rights.[63]  It found that "denying felons the right to bear arms is

3 consistent with the explicit purpose of the Second Amendment."[64]  It also identified analogous

4 historical regulations that excluded felons from militias and the right to bear arms.[65]  Because the

5 *Vongxay* court performed a historical-tradition analysis and concluded that history supports gun-

6 possession limits on felons, I find that *Vongxay* is consistent with *Bruen* and remains controlling

7 law.

8    ### 2.    § 922(g)(1) remains constitutional under <u>Bruen</u>'s new test.

9    Even if *Vongxay*'s analysis is too thin to render it controlling law post-*Bruen*, its

10 conclusion that § 992(g)(1) passes constitutional muster remains sound under the new test.

11 Brown contends in his motion to dismiss that individuals with felony convictions are part of "the

12 people" that the founders intended to protect under the Second Amendment's "right of the people

13 to keep and bear [a]rms."[66]  Although the magistrate judge does not opine on this issue directly,

14 Brown argues in his objection that the *Heller* statement—"'the people' [] unambiguously refers

15 to all members of the political community, not an unspecified subset."—supports this

16 proposition.[67]  He simultaneously theorizes that the *Heller* statement that "nothing in our opinion

17 should be taken to cast doubt on longstanding prohibitions on the possession of firearms by

18 felons" is mere dicta.[68]

---

20 [63] *Vongxay*, 594 F.3d at 1117–18 (cleaned up).

21 [64] *Id*. at 1117.

    [65] *Id*. at 1117–18.

22 [66] ECF No. 26 at 5–7.

23 [67] ECF No. 41 at 11 (quoting *Heller*, 554 U.S. at 580) (cleaned up).

    [68] *Id*. at 6 (quoting *Heller*, 554 U.S. at 626).

1    The High Court's use of this statement was more than mere dicta because it was

2 incorporated into the Court's analysis of "the historical understanding of the scope of the right"

3 and its "limitations."[69]  Justice Kavanaugh's concurrence in *Bruen* also emphasized that the

4 "Second Amendment allows a variety of gun regulations," quoting this very same sentence from

5 *Heller* as support.[70]  So *Bruen* does not contradict *Heller* on the issue of felon-gun possession;

6 rather, it reinforces *Heller*'s conclusion that individuals with felony convictions fall outside the

7 scope of the Second Amendment's protections.[71]

8    Brown also objects that there are no comparable historical regulations to § 922(g)(1), so

9 it is not longstanding and cannot pass the second part of the *Bruen* test.[72]  He contends that

10 colonial-era laws that disarm those who "defamed acts of Congress, failed to swear allegiance to

11 the state, or refused to defend the colonies" are too dissimilar to be analogues precursors.[73]  And

12 proposals to state conventions are likewise distinguishable because the proposals did not become

13 law.[74]

14    But it is not necessary that § 992(g)(1) have a historical twin, just that there is an

15 analogous precursor.  And here, there is evidence of limitations on the gun rights of suspect or

16 dangerous individuals that pre-dates our nation's founding.[75]  Although historical records from

17

---

18 [69] *Heller*, 554 U.S. at 625–26.

19 [70] *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (citing *Heller*, 554 U.S. at 636).

20 [71] The majority in *Bruen* concluded that its holding was "in keeping with *Heller*."  *Bruen*, 142 S. Ct. at 2126.

21 [72] ECF No. 26 at 8–20.

   [73] ECF No. 41 at 12 (quoting ECF No. 31 at 17).

22 [74] *Id*.

23 [75] Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, Law & Contemp. Probs. 55, 72 (2017) (recounting that 1637 Massachusetts Colony law required named individuals who "seduced & led [others] into dangerous errors" to turn in their weapons

that period can be vague or sparse, a majority of courts have found a history and tradition of limiting the gun rights of individuals who stray from the law or legal norms.[76]  Because individuals with felony convictions fall into this category, § 992(g)(1) is consistent with that longstanding historical tradition.

I find that *Vongxay* remains controlling law, binding me to conclude that Brown's indictment under § 992(g)(1) is constitutional.  But even if *Bruen* abrogated Ninth Circuit Second Amendment jurisprudence, I still find that § 992(g)(1) passes *Bruen*'s new one-step approach to Second Amendment challenges.  So I overrule Brown's objection, adopt the magistrate judge's recommendation, and deny Brown's motion to dismiss his indictment.

## Conclusion

IT IS THEREFORE ORDERED that the government's objection **[ECF No. 42]** and Brown's objection **[ECF No. 41] are OVERRULED**, and the magistrate judge's report and recommendation **[ECF No. 40] is ADOPTED**.  Brown's motion for a bill of particulars **[ECF No. 25] is GRANTED** and his motion to dismiss his indictment **[ECF No. 26] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
October 25, 2023

---

and firearms, and a Pennsylvania law enacted in the 1770's forbid individuals from possessing guns if they "refused to swear loyalty to the new American government").

[76] *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (finding under a *Bruen* analysis that § 922(g)(1) is consistent with this nation's historical tradition of firearm regulation); *United States v. Charles*, 633 F. Supp. 3d 874 (W.D. Tex. 2022); *United States v. Ingram*, 623 F. Supp. 3d 660 (D.S.C. 2022); *United States v. Young*, 639 F. Supp. 3d 515 (W.D. Pa. 2022); *United States v. Butts*, 637 F. Supp. 3d 1134 (D. Mont. 2022); *contra Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 104 (3d Cir. 2023) (holding that § 992(g)(1) was unconstitutional as narrowly applied to a defendant convicted of a misdemeanor punishable by up to five years in prison).